**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

LINSEY CRAWFORD,

    Petitioner,

v.                                            Case No. 8:13-cv-1291-T-36EAJ

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Petitioner Linsey Crawford, an inmate in the Florida Department of Corrections proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1). He challenges his convictions entered by the Circuit Court for the Twelfth Judicial Circuit, Manatee County, in 2009. Respondent filed a response (Dkt. 10), in which it does not contest the timeliness of Crawford's petition. Crawford filed a reply (Dkt. 15). Upon review, Crawford's petition must be denied.

## PROCEDURAL HISTORY

Crawford was charged with trafficking in illegal drugs (4-14 grams) (count one); sale or delivery of cocaine (counts two, three, and four); sale or delivery of controlled substance (count five); and trafficking in illegal drugs (14-28 grams) (count six). (Dkt. 11-1, dkt. pp. 63-66.) He entered a plea of nolo contendere and received a sentence of fifteen years in prison on each count. (*Id.*, dkt. pp. 31-34.) Crawford received mandatory minimum sentences of fifteen years on counts one and six, the trafficking charges. (*Id.*, dkt. p. 33.)

He did not appeal the convictions and sentences.

Crawford filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, followed by an amended motion. (*Id.*, dkt. pp. 5-11, 19-25.) The state court summarily denied his amended motion, and the state appellate court affirmed the order of denial. (*Id.*, dkt. pp. 26-84, 113.) The Florida Supreme Court dismissed Crawford's petition for review. (*Id.*, dkt. p. 115.)

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under

> § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents

defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster,* _U.S._, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

Review of the state court decision is limited to the record that was before the state court. *Pinholster,* 131 S. Ct. at 1398. Crawford bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998). In order to show deficient performance, a petitioner must demonstrate that "in light of all the circumstances, the

Page 4 of  13

identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Crawford must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. When the case involves a plea, the prejudice inquiry focuses on whether counsel's deficient performance "affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the

adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted).  *See also Pinholster*, 131 S. Ct. at 1410 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered.  466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

**Ground One**

Counts one and six, trafficking in illegal drugs, resulted from Crawford's sales of hydrocodone.  Crawford argues that counsel was ineffective for not filing a motion to

dismiss these counts because they were improperly charged under the trafficking statute, § 893.135, Fla. Stat.

Section 893.03, Fla. Stat. sets forth five categories of controlled substances, Schedules I, II, III, IV, and V, and identifies the substances that fall under each category. Hydrocodone may fall under Schedule II or Schedule III. It is a Schedule III substance if the quantity is "[n]ot more than 300 milligrams of hydrocodone per 100 milliliters or not more than 15 milligrams per dosage unit. . ." § 893.03(3)(c)3., (3)(c)4., Fla. Stat.  In an amount greater than this, hydrocodone is a Schedule II substance.  § 893.03(2)(a)1.j., Fla. Stat.

Crawford argues that he "sold Schedule III narcotics in count (one) and (six) . . . But was charge[d] with selling Schedule II narcotics which is trafficking under 893.135. Schedule III is punishable by a 3rd degree felony up to 5 years." (Dkt. 1, p. 5.) More specifically, in his amended postconviction motion, Crawford argued that the hydrocodone tablets were 10 milligram tablets. (Dkt. 11-1, dkt. p. 22.) Thus, he argued, it was a Schedule III substance not subject to prosecution under the trafficking statute. (Id.)

Preliminarily, the record reflects that Crawford's plea was voluntary. In rejecting his postconviction motion, the state court found that Crawford "knowingly, intelligently, and voluntarily entered into a plea agreement for which he was aware of the charges against him." (Dkt. 11-1, dkt. p. 28.) The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).[1]

---

[1] The analysis is the same for guilty pleas and nolo contendere pleas such as Crawford's. *See Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983) ("The fundamental constitutional consideration when a petitioner challenges his plea is whether it is voluntary.  The rule is the same for pleas of guilty or *nolo contendere*."). *See also Florida v. Royer*, 460 U.S. 491, 495 n.5 (1983) (stating that "[u]nder Florida law, a plea of nolo contendere is equivalent to a plea of guilty.").

"A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).

Crawford told the court at the change of plea hearing that he understood counts one and six were first degree felonies each punishable by up to 30 years in prison, and that the remaining charges were second degree felonies each punishable by up to fifteen years in prison. (Dkt. 11-1, dkt. pp. 76-77.) He further stated that he understood he was giving up his right to an attorney to represent him at trial, his right to call witnesses and cross-examine the State's witnesses, and his right to testify, and understood that it would not be held against him if he remained silent. (*Id.*, dkt. p. 77.) Crawford indicated he was entering the plea because he was guilty and because he believed it to be in his best interests. (*Id.*, dkt. p. 77-78.) He stated that he was not pressured into entering the plea, and that he read, understood, and voluntarily signed an acknowledgment and waiver of rights form. (*Id.*, dkt. pp. 78-79.) Accordingly, the state court found that Crawford's plea was entered freely and voluntarily with full knowledge of the consequences of the plea. (*Id.*, dkt. p. 82.)

Although a defendant's statements during a plea colloquy are not insurmountable, "the representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "[W]hen

a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.'" *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). The record supports the state court's finding that Crawford knowingly, intelligently, and voluntarily entered his plea.

Generally, entry of a voluntary plea forecloses allegations of constitutional violations that occurred prior to the plea. *See Tollett v. Henderson*, 411 US. 258, 267 (1973) ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); *Lefkowitz v. Newsome*, 420 U.S. 283, 288 (1975) ("[T]he general rule [is] that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings.").

A plea does not bar review of a claim of ineffective assistance of counsel to the extent the alleged ineffectiveness bears upon the voluntariness of the plea itself. *See Hill*, 474 U.S. at 56-57 (defendant who enters guilty plea upon advice of counsel can only attack the voluntary nature of the plea by showing that counsel's advice was not within the range of competence demanded of attorneys); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained."); *Stano,* 921 F.2d at 1150-51 ("The Court allows only challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove 'serious derelictions' in his counsel's advice regarding the plea.") (citation omitted).

Because Crawford does not allege that counsel's alleged deficiency rendered his plea involuntary, however, his claim of ineffective assistance of counsel is foreclosed from federal habeas review.

Notwithstanding, Crawford fails to show that counsel was ineffective. The state court denied Crawford's claim of ineffective assistance of counsel when he raised it in his postconviction motion:[2]

> [T]he Defendant claims that "Detective Bulso as narrated in the information to substantiate the arrest and subsequent conviction identified the Loratab [sic] Hydrocodone . . . as 10 milligram per dosage unit in the information. He misidentified said tablets as schedule II narcotics." The Court finds nothing in the record to support this claim. On the contrary, the Complaints for Warrants specifically identify the substances and amounts obtained. None of which describe the Hydrocodone as the Defendant alleges; instead, the Affiant identifies the exact amounts of each substance obtained from the Defendant, and there is no discrepancy between the Affiant's report and the Information.
> [ ] Defendant claims that counsel was ineffective for failing to recognize this defect and timely motion for a dismissal. The Court finds that there is no defect; therefore, counsel cannot be deemed ineffective. As such, the Defendant has failed to show counsel's ineffectiveness pursuant to *Strickland*; thus his claim is denied.

(Dkt. 11-1, dkt. p. 28) (court's record citation omitted).

The postconviction court found that there was no error in the charging document upon which counsel could move to dismiss the charges. And in affirming the denial of this claim, the state appellate court cited two state decisions, *State v. Boyette*, 911 So.2d 891 (Fla. 1st DCA 2005) and *Nottebaum v. State*, 898 So.2d 1073 (Fla. 5th DCA 2005). These

---

[2] A petitioner must exhaust his constitutional claims in state court before federal habeas relief can be granted. 28 U.S.C. § 2254(b)(1). Respondent agrees that Crawford exhausted his claim in state court. (Dkt. 10, p. 5.)

decisions discuss a 2001 amendment[3] to the trafficking statute, § 893.135, Fla. Stat., clarifying that the weight of a controlled substance is the aggregate weight of all substances within a mixture. *See Boyette*, 911 So.2d at 892 (under the amended statute, the State was not required to prove that each dosage unit contained more than 15 milligrams of hydrocodone, as the weight of a controlled substance is measured by the total weight of the mixture, including controlled and non-controlled substances); *Nottebaum*, 898 So.2d at 1074 (the amended statute provides that the weight of a controlled substance is the total weight of the mixture, including the controlled substance and any other substance in the mixture).[4]

The state courts have made clear the error Crawford alleges is not a basis under Florida law to move to dismiss the charges. This court must defer to this determination. "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). *See also Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).

---

[3] The charging document provides that Crawford's offenses occurred in 2009. (Dkt. 11-1, dkt. pp. 63-65.)

[4] A previous version of the trafficking statute reflected that it only applied to Schedule I and Schedule II substances. The 2001 amendments to the trafficking statute provided that it covers the provisions of Schedule III concerning hydrocodone. *See* § 893.135(1)(c)1., Fla. Stat. (2001) ("Any person who knowingly sells . . . 4 grams or more of . . . hydrocodone, as described in s. 893.03(1)(b), (2)(a), *(3)(c)3.*, or *(3)(c)4.*, . . . commits a felony of the first degree, which felony shall be known as 'trafficking in illegal drugs,'. . .") (emphasis added).

Furthermore, the record supports the conclusion that the substances exceeded 4 grams, the minimum amount required by the trafficking statute. Specifically, a complaint for warrant regarding count one concerns twelve hydrocodone pills; although they were described as "10 Milligram Hydrocodone," the approximate weight of the pills was 8 grams. (Dkt. 11-1, dkt. pp. 45-47.) Another complaint for warrant reflects that count six involved twenty-seven hydrocodone pills with an approximate weight of 17.5 grams. (*Id.*, dkt. pp. 36-37.)

Counsel cannot be deemed ineffective for failing to file a meritless motion. *See Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (finding that counsel was not ineffective for failing to raise issues that clearly lack merit). Crawford does not show that the state courts unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim. Crawford shows no entitlement to relief on Ground One.

Additionally, as addressed, Crawford petitioned the Florida Supreme Court for review of the state appellate court's order affirming the state court's rejection of his postconviction motion. Crawford now argues that the Florida Supreme Court abused its discretion when it determined that it was without jurisdiction and dismissed his petition for review. Crawford's challenge to the Florida Supreme Court's rejection of his petition for review cannot provide federal habeas relief, as it raises no constitutional challenge to the validity of his conviction. 28 U.S.C. § 2254(a); *cf. Carroll v. Sec'y DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) ("[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment–*i.e.,* the conviction itself–and thus habeas relief is not an appropriate remedy.").

Accordingly, the Court **ORDERS** that Crawford's petition (Dkt. 1) is **DENIED**. The

Clerk is directed to enter judgment against Crawford and to close this case.

It is further **ORDERED** that Crawford is not entitled to a certificate of appealability. A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Crawford "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Crawford has not made this showing. Finally, because Crawford is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on December 10, 2015.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Petitioner Linsey Crawford
Counsel for Respondent